IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
------------------------------------
                                   :
   GERRY MASLOW,                   :
                                   :
           Plaintiff,              :   CIVIL NO. 07-1876 (NLH)
                                   :
      v.                           :
                                   :        OPINION
   COMMISSIONER OF                 :
   SOCIAL SECURITY,                :
                                   :
           Defendant.              :
                                   :
------------------------------------
```

**APPEARANCES:**

Richard L. Group, Esquire
Bross & Group, P.A.
102 Browning Lane, Building C-1
Cherry Hill, New Jersey 08003

   *Attorney for Plaintiff*

Christopher J. Christie
United States Attorney
      By:  Vernon Norwood, Esquire
           Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

   *Attorney for Defendant*

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of

the Social Security Administration, denying the application

of Plaintiff for Disability Insurance Benefits and
Supplemental Security Income ("Social Security benefits")
under Title II and Title XVI of the Social Security Act.   42
U.S.C. § 401, et seq.   The issue before the Court is whether
the Administrative Law Judge ("ALJ") erred in finding that
there was "substantial evidence" that Plaintiff was not
disabled at any time since her alleged onset date of
disability, April 25, 2000.   For the reasons stated below,
this Court will affirm that decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, Gerry M. Maslow, had been employed in
various positions, including as a human services technician
and supermarket clerk, before April 25, 2000, at which time
Plaintiff claims that she could no longer work due to her
asthma, respiratory problems, chronic back pain, anxiety and
depression.   Plaintiff applied for Social Security
benefits,[1] and after a hearing before an ALJ, it was
determined that Plaintiff was not disabled.   Plaintiff
appealed the decision, and the Appeals Council denied
Plaintiff's request for review.   Plaintiff now seeks this

---

[1] To obtain disability benefits, Plaintiff was required
to demonstrate that she was still under a disability as of
March 31, 2001, which is the date her eligibility for
disability benefits expired.

Court's review.

## II. DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the  Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d

3

Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  <u>Id.</u> (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed
> all evidence and has sufficiently
> explained the weight he has given to

> obviously probative exhibits, to say
> that his decision is supported by
> substantial evidence approaches an
> abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and

evaluate the medical evidence presented, Fargnoli, 247 F.3d

at 42, "[t]here is no requirement that the ALJ discuss in

its opinion every tidbit of evidence included in the

record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir.

2004).  In terms of judicial review, a district court is not

"empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  Williams, 970

F.2d at 1182.  Moreover, apart from the substantial evidence

inquiry, a reviewing court is entitled to satisfy itself

that the Commissioner arrived at his decision by application

of the proper legal standards.  Sykes, 228 F.3d at 262;

Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for

purposes of an entitlement to a period of disability and

disability insurance benefits as the inability to engage in

any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.     If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.     If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.     Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the

Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.   Analysis

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found at Step Two that her asthma and other respiratory problems were not severe, and her history of drug abuse did not affect her ability to work.  The ALJ did find, however, that her chronic back problems and mental health disorders were severe.   The ALJ found Plaintiff not disabled, however, because Plaintiff's impairments did not meet the medical equivalence criteria (Step Three), and she was capable of performing past relevant work with certain preclusions (Step Four).  The ALJ also found that in the hypothetical situation where Plaintiff could not return to past relevant work, she has the residual functional capacity to perform other jobs which are in significant numbers in the national economy (Step Five).

Plaintiff presents several arguments for review. Primarily, Plaintiff argues that the ALJ erred when he

8

determined that despite Plaintiff's back and mental health issues, Plaintiff was capable of performing her past relevant work and/or had the residual functional capacity to perform other jobs.  Plaintiff also argues that the ALJ erred when he determined that her asthma was not a severe impairment at Step Two.

### 1. Whether the ALJ erred in determining that Plaintiff was capable of performing her past relevant work and/or had the residual functional capacity to perform other jobs

As summarized above, the ALJ found that Plaintiff's back and mental health issues did not preclude her from either working at her prior job as a store clerk, or performing other jobs available in the national economy. Plaintiff argues that the ALJ erred in this determination because (1) his finding that Plaintiff had the residual functional capacity ("RFC") to perform light work is not supported by the records of the treating physician and other evidence; (2) he failed to comply with SSR 82-62; (3) his hypothetical to the Vocational Expert ("VE") was improper; (4) he improperly assessed Plaintiff's credibility; and (5) he did not consider the side effects of her medication.

The ALJ's decision with regard to her back and mental health impairments can be separated into two distinct

findings. The ALJ first determined, at Step Four, that Plaintiff was capable of performing her past work as a store clerk.  He then determined, hypothetically, that even if she could not perform her job as a store clerk, she retained the RFC to perform other jobs.  This hypothetical finding addressed Step Five.  The distinction between these two findings is important, because the ALJ's finding at Step Four that Plaintiff was capable of performing past relevant work effectively stopped the inquiry into her disability application.  That is, after finding that Plaintiff was not disabled at Step Four, he was not required to continue to Step Five.  See Kirk v. Commissioner, 177 Fed. Appx. 205, 207 (3d Cir. 2006) (explaining that the "step-four inquiry is designed to calculate the claimant's residual functional capacity (RFC) and compare it to the requirements of the claimant's [past relevant work] PRW," and "if the claimant has a RFC that makes it possible for him to continue to perform PRW, the claimant is not disabled, and benefits will be denied").  Thus, even though the ALJ chose to also address Step Five, whether he erred at Step Five is immaterial if it is determined that the ALJ did not err at Step Four.

To determine whether the ALJ erred at Step Four, his

findings must be analyzed.  The ALJ noted that he was
required to determine whether as of April 25, 2000,
Plaintiff was unable to perform her past relevant work.
With regard to her back issues, the ALJ noted that Plaintiff
had back surgeries in 1994, that she had worked
substantially after that point, and that there were no other
medical records with regard to her back problems until May
21, 2001.  Thus, the ALJ concluded that "there is little in
the way of medical evidence to substantiate severe
functional limitations prior to the date she was last
insured [March 31, 2001]."  (R. at 32.)  The ALJ, however,
went on to review her medical records of her treating
physicians, which spanned from 2002 through late 2004.  The
ALJ summarized in detail the findings of Plaintiff's three
doctors (R. at 33-34), as well as the State medical
consultant's examination on January 15, 2003 (R. at 33).
The ALJ found that her treating doctors' findings "would not
rule out the claimant's being able to perform her past
relevant work," (R. at 33), and that the State medical
consultant's findings showed that Plaintiff had the capacity
to perform the full range of light work, with some
restrictions (id.).

With regard to her mental health issues, the ALJ

11

reviewed and summarized a consultative mental status examination report dated October 17, 2002 and a State Agency psychological consultant report dated October 23, 2002.  (R. at 34.)  The ALJ noted that these reports showed that Plaintiff was able to cook, go shopping, use public transportation, had appropriate thought content, no presence of thought disorders, was goal directed, had no suicidal thoughts, hallucinations, delusions, phobias, or obsessive/compulsive behaviors, was able to concentrate, had unimpaired social judgments, had above average abstract reasoning, was able to perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday or work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public.  (Id.)  The ALJ also noted that Plaintiff was not on any psychotropic medications, and that the State consultant "cited positive findings in the record which would not rule out the claimant's being able to perform her past relevant work."  (Id.)  The ALJ concluded that even though Plaintiff had a mild degree of limitation in the activities of daily living and social functioning, a moderate degree of

limitation in concentration, persistence and pace area of functioning, she had no episodes of decomposition.  (R. at 34-35.)

Further supporting his conclusion that Plaintiff's back and mental health problems did not preclude her from performing her past work was his consideration of Plaintiff's testimony in comparison to the record evidence. The ALJ found that Plaintiff "has an impairment that is reasonably expected to produce the type of symptoms she alleges, but her complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone." (R. at 35.)  The ALJ noted that in a September 18, 2002 report by a Social Security District Office employee, Plaintiff stated that her anxiety and panic attacks were controlled by medication and that she did not want to see a psychiatrist paid for by the SSA.[2]  (R. at 32, 36.)  The ALJ also noted that Plaintiff was quoted in the October 17, 2002 consultative examination report and states that she left her store clerk position due to stress, but in another report dated November 8, 2002 she stated that she left that job because she could not tolerate the cold in the

---

[2]The ALJ cited to a Fourth Circuit case which held that if an individual's impairment can be reasonably controlled by medical treatment, it is not disabling.  (R. at 36.)

freezers.  (R. at 35.)  The ALJ further noted that Plaintiff stated during her November 8, 2002 consultive examination that she was having breathing difficulties even though she quit smoking two years prior, while her own physician reported on August 3, 2004 that Plaintiff stated that she quit smoking only seven weeks ago.  (Id.)  The ALJ noted another inconsistency where on October 2002 Plaintiff reported that she suffered from emphysema, but she had never been medically diagnosed with that condition.  (R. at 36.)

The ALJ also noted that other conduct by Plaintiff negatively affected her credibility.  One of her treating physicians, Dr. Neidorf, reported in September 2002 that Plaintiff had been a "no show" several times, and the doctor had a long discussion with her about this.  The same doctor also reported that Plaintiff showed some evidence of drug seeking behavior.  (Id.)  The ALJ also noted that Plaintiff testified and was cited in her October 2002 consultative examination report that she had only completed the eleventh grade, but in a disability questionnaire and another consultative examination in November 2002, Plaintiff stated that she had finished the twelfth grade.  (Id.)  Based on the foregoing, the ALJ concluded that Plaintiff had some symptoms and limitations on her functions, but not to extent

that Plaintiff alleged.  (Id.)

Finally, the ALJ considered Plaintiff's own testimony and the testimony of her friend and roommate with regard to Plaintiff's ability to perform daily activities, including doing light shopping, prepare meals, make the bed, do the dishes, and maintain grooming and hygiene needs independently, effectively, and appropriately.  (R. at 31.)

Following the recitation of Plaintiff's medical evidence with regard to her back and mental health problems, and considering her credibility and testimony, the ALJ completed his Step Four analysis of determining whether Plaintiff was capable of performing her past work.  The VE indicated that Plaintiff's past work as a supermarket clerk was rated as "unskilled, light work."  (R. at 37.)  The ALJ noted that light work requires the ability to frequently lift ten pounds and occasionally lift twenty pounds, and some of those jobs require standing, and those jobs that are performed in the seated position often require the worker to operate hand or leg controls.  (R. at 31-32.)  The ALJ found that Plaintiff's capacity for light work was diminished in certain ways in that she could never climb ladders, ropes, or scaffold, she could not crouch, she must avoid exposure to fumes, odors, dusts, gases, and poor ventilation, and was

15

restricted to work that involves simple repetitive tasks, but she was able to lift/carry ten pounds frequently, and occasionally lift twenty pounds, she could stand/walk for six hours in an eight hour work day, and was able to sit for six hours in an eight hour work day.  (R. at 32.) Considering all of the evidence, the ALJ concluded that Plaintiff's limitations did not prevent her from performing unskilled, light work, and thus, she was not precluded from being able to perform the duties of a supermarket clerk.

Plaintiff disagrees with the ALJ's decision.  First, Plaintiff argues that the ALJ's finding that she was "able to lift/carry ten pounds frequently, and occasionally lift twenty pounds, she could stand/walk for six hours in an eight hour work day, and was able to sit for six hours in an eight hour work day" is in conflict with her medical evidence.  Plaintiff cites to certain findings in the record that Plaintiff interprets as "clearly inconsistent with the ability to stand and walk for six hours in an eight-hour work day" and "are inconsistent with an ability to perform light work on a full-time competitive basis."[3]  (Pl. Br. at

---

[3]Plaintiff's professed inconsistent evidence commingles her impairments, rather than separately indicating which impairment--whether her back, mental, or respiratory problems--caused her to be unable to perform light work.

15, 16.)  For instance, Plaintiff argues that the findings
of Plaintiff's primary physician, Dr. Neidorf, in May and
July 2001--that Plaintiff walked and moved with stiffness
when getting out of a chair, she sat uncomfortably and was
constantly fidgeting, she walked with a limp, had continued
anxiety, and was in the midst of a flare up of wheezing and
coughing--demonstrates that she was not able to perform
light work.  Plaintiff's argument is unavailing because the
ALJ has properly supported his findings with substantial
evidence.

        As a primary matter, the Court is not "empowered to
weigh the evidence or substitute its conclusions for those
of the [ALJ]."  Williams, 970 F.2d at 1182.  Thus, the Court
is precluded from independently determining whether certain
evidence shows that Plaintiff is incapable of standing for
six hours a day or otherwise not being able to perform light
work.  Instead, the ALJ's decision can only be overturned if
it was found that the ALJ was unreasonable in his review of
Plaintiff's professed inconsistent evidence, or overlooked
that evidence.  Here, however, the ALJ was reasonable in his
consideration of all of the evidence, and he considered all
the evidence presented to him.

        In his recitation of the medical evidence, the ALJ

documented both Plaintiff's abilities and inabilities as reported by her doctors.  For example, the ALJ summarized Dr. Judith Adams' November 8, 2002 report, which stated that Plaintiff had some problems rising from a chair and with changing positions from a lying position to a sitting position on the examination table, and she had a reduced range of motion in the lumbar spine and straight leg rising was positive bilaterally.  (R. at 33.)  The ALJ also noted that the report stated that Plaintiff had a normal gait, she was able to walk briefly on her heels and toes, her lungs contained no wheezes, and the strength of both lower extremities was rated as full.  (Id.)  The ALJ similarly cited Plaintiff's abilities and inabilities in consideration of her other medical evidence.  (R. at 33-35.)  Indeed, the ALJ noted the May 2001 report by Dr. Neidorf and cited the findings that Plaintiff now claims support her inability to work.  Furthermore, it was the ALJ's consideration of Plaintiff's inabilities that led the ALJ to conclude that Plaintiff had certain restrictions on her performance of light work.

The ALJ's decision was also reasonable in that, as the ALJ noted, there "are no medical opinions in the record limiting the claimant's exertional functional capacity lower

than what" the ALJ established, and that "[n]o doctor has ever stated or suggested that the claimant was disabled or totally incapacitated."  (R. at 35.)  Simply disagreeing with the ALJ's assessment is not sufficient to establish that his decision was not supported by substantial evidence.  Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d Cir. 2003).

Ultimately, the ALJ noted that on January 15, 2003, the State Agency consultant "found that the claimant was able to lift and carry ten pounds frequently and twenty pounds occasionally, could stand, sit, or walk for about six hours out of eight hours during the work day and had unlimited push/pull abilities."  (R. at 33.)  The ALJ also noted that the most recent medical reports of Plaintiff's treating physician, Dr. Aurura P. Dela Rosa, showed Plaintiff's "gait as satisfactory as there was no limp or antalgic gait"; she was "observed as being pleasant and cooperative with an intact memory and she was not depressed or anxious"; and she "had full strength in her upper and lower extremities." (Id.)  The ALJ's conclusion that Plaintiff was able to perform light work, even if based solely on her medical records, is reasonable and supported by substantial

evidence.[4]

---

⁴Plaintiff also argues that when the ALJ determined that her position as a supermarket clerk was unskilled light work, and that Plaintiff was capable of performing such a job, the ALJ did not comply with SSR 82-62, which provides, "Adequate documentation of past work includes factual information about those work demands which have a bearing on medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. . . ." Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).  The primary source for determining the skill level, exertional demands and non-exertional demands of a Plaintiff's past work is the claimant's testimony.  Id. at 124 (citing SSR 82-62).  The ALJ must consider "(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Id.
    Here, as noted above, Plaintiff provided conflicting statements about why she left her supermarket clerk job--one time she stated it was because of stress, and other time she stated it was because of the cold in the freezers.  She testified at the hearing that (1) she was having problems with the refrigeration because it was causing her colds and respiratory infections, (2) the job required lifting, (3) she was on her feet eight hours a day, and (4) after working there for almost a year, she "got sick" and "just quit." (R. at 259-60.)
    The ALJ found that Plaintiff's statements were inconsistent, the medical evidence did not completely support her complaints, and the medical evidence demonstrated that she could perform her supermarket clerk job, which was classified as light work by the VE, with some limitations.  These findings do not contradict Plaintiff's testimony about her job duties.  Further, as discussed

The ALJ's decision was not based solely on the medical evidence, however, as he also considered Plaintiff's testimony, and correspondingly, her credibility.  Plaintiff argues that the ALJ improperly assessed her credibility.[5]  Specifically, Plaintiff claims that the ALJ focused on "minute inconsistencies" that have no impact on Plaintiff's actual asserted limitations.

The Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. § 404.1529(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony.  Schaudeck v.

_____

below, the ALJ found that even if Plaintiff could not perform her past relevant work as a supermarket clerk, she was able to perform sedentary work, which is also not contradicted by Plaintiff's statements.  Thus, Plaintiff's argument that the ALJ violated SSR 82-62 is unavailing.

[5]Plaintiff also contends that the ALJ improperly disregarded the testimony of Plaintiff's roommate.  The ALJ recounted the testimony of Plaintiff's roommate, who stated that she had known Plaintiff since 1987 and that she had noticed a change in her personality over the past four or five years, as she was not as easy going as she was before.  (R. at 31.)  Plaintiff's roommate also testified that she does anything that Plaintiff cannot do without pain, and that they will get together with friends.  (Id.)  Plaintiff has not shown how this evidence would alter the ALJ's consideration of the medical evidence or support a conclusion that Plaintiff is not able to perform light work.

<u>Comm'r of Social Security</u>, 181 F.3d 429, 433 (3d Cir. 1999);

SSR 96-7p.  The explanation of SSR 96-7p provides,

> No symptom or combination of symptoms can be the
> basis for a finding of disability, no matter how
> genuine the individual's complaints may appear to
> be, unless there are medical signs and laboratory
> findings demonstrating the existence of a
> medically determinable physical or mental
> impairment(s) that could reasonably be expected to
> produce the symptoms.
>
> . . .
>
> In determining the credibility of the individual's
> statements, the adjudicator must consider the
> entire case record, including the objective
> medical evidence, the individual's own statements
> about symptoms, statements and other information
> provided by treating or examining physicians or
> psychologists and other persons about the symptoms
> and how they affect the individual, and any other
> relevant evidence in the case record.

SSR 96-7p.

Here, the ALJ did not find Plaintiff's subjective

complaints to be completely consistent with medical

evidence.  As discussed above, the ALJ found that the

medical evidence supported her ability to perform light work

with certain restrictions, and that due to the

inconsistencies with Plaintiff's own statements and

testimony, Plaintiff could not override or otherwise alter

the medical evidence.  In compliance with the regulations,

the ALJ explained why he was rejecting Plaintiff's testimony

with regard to her subjective complaints.  He also explained

how her testimony did not find support in the medical

records.  Consequently, the ALJ did not err in considering

Plaintiff's credibility.[6]

_____

[6]Plaintiff also argues that the ALJ did not properly
consider the side effects of her medication, in violation of
20 C.F.R. § 404.1529, which provides, "In determining
whether you are disabled, we consider all your symptoms,
including pain, and the extent to which your symptoms can
reasonably be accepted as consistent with the objective
medical evidence and other evidence."  It is unclear whether
Plaintiff is arguing that the ALJ did not properly consider
Plaintiff's complaints about the side effects of her
medication, or whether the ALJ failed to consider the
medical records with regard to the side effects of her
medication.  Her citation to 20 C.F.R. § 404.1529 leads the
Court to believe that she is arguing that the ALJ did not
properly consider her complaints about the medication's side
effects.  Plaintiff, however, presents not only her
testimony regarding the side effects (which includes a
statement that her medication makes her tired), but she also
cites to the Physician's Desk Reference (PDR) and notes from
her doctors with regard to her medication's side effects.

     To the extent that Plaintiff is arguing that the ALJ
did not properly consider her testimony, the Court has
already determined that the ALJ properly considered her
credibility.  With regard to whether the ALJ did not
properly consider the medical evidence with regard to her
medication, an ALJ is not required to take judicial notice
of the PDR to determine (1) whether a particular drug has
side effects, (2) whether a claimant has suffered those side
effects, and (3) whether those side effects cause her to be
disabled.  With regard to Plaintiff's medical records, even
though Plaintiff testified that her medication made her
sleepy, one of her doctors noted that Plaintiff had
difficulty initiating and maintaining sleep.  (Pl. Br. at
26, citing R. at 170.)  The only other side effect noted in
the medical records includes bronchitis as a side effect of
taking Advair.  (Id., citing R. at 214.)  There is no other
indication in the medical records that Plaintiff's

After finding that Plaintiff was still able to perform her past relevant work, thus completing the Step Four analysis, the ALJ went a step further and considered, hypothetically, whether Plaintiff was capable of performing any other jobs in the national economy.  Plaintiff argues that the ALJ erred in making this determination because he did not provide the VE with a proper hypothetical.  Specifically, Plaintiff argues that the ALJ erred when he did not provide the VE with a hypothetical that included all of Plaintiff's impairments.

Plaintiff's argument is unavailing.  As an initial matter, as stated above, because the ALJ found that Plaintiff was not disabled at Step Four, he was not required to go on to Step Five.  Because the Court has found that the ALJ did not err in his Step Four decision, there is no need to consider Step Five.  However, because the ALJ did consider Step Five, and the Plaintiff takes issue with that decision, the Court will consider whether the ALJ properly considered Step Five.

Where the burden was on Plaintiff to prove every element of her claim by a preponderance of the evidence for

---

medication caused her to be unable to perform her past relevant work.  Consequently, Plaintiff's argument that the ALJ violated 20 C.F.R. § 404.1529 is unpersuasive.

the first four steps, at Step Five, the burden shifts to the Commissioner to determine whether or not Plaintiff is capable of performing other work which exists in the national economy.  To do so, the ALJ must consider the claimant's residual functional capacity, age, education, and past work experience.  Additionally, in making this Step Five determination, an ALJ often relies upon a hypothetical posed to a VE.

Here, the ALJ first asked the VE to provide him with a vocational profile.  The VE stated, "The claimant . . . currently presents vocationally as a person approaching advanced age, had a limited education and the past relevant work . . . that was performed the longest, approximately nine and a half years, was the supervisor of crew labor, [which] is classified as light, semiskilled work."  (R. at 282.)  The VE testified that the second longest job was Plaintiff's "clerk's job at Shoprite," which is light, unskilled work.  (Id.)  The VE also listed other unskilled jobs that the Plaintiff had over the years.  The ALJ asked whether any of those jobs exposed Plaintiff to fumes or other harmful smells, and the VE answered "no."  (R. at 282-84.)  The ALJ then posed a hypothetical question to the VE: "Without regard to any limitations, but just in the abstract

that skills that one might acquire as a supervisor of crew labor, what skills might they be and would they transfer to any other kind of jobs of a light or sedentary nature?" (R. at 284.) The VE answered, "Yes. . . . The primary skill level that would be transferrable would be the verbal and the written communication skills in the carrying out of job duties . . . . The verbal written communication skills would transfer to such a job as a telephone solicitor or a teacher aide for the handicapped. Those are sedentary semiskilled jobs." (Id.) The VE testified that there are 12,500 telemarketing jobs and 1,200 teacher aide jobs in New Jersey. (R. at 285.)

The ALJ posed another hypothetical question to the VE: "If a hypothetical individual the similar age, education and past work experience as this particular claimant were, because of pain and discomfort, having difficulty maintaining attention to tasks such that the claimant would not be able to maintain attention to tasks for a two hour increment, would that have an impact on any of the work that we've been discussing?" (Id.) The VE answered that this hypothetical claimant would not be able to perform any job in the national economy. (Id.)

The ALJ considered the VE's testimony, and determined

26

that "even if [Plaintiff] was unable to return to her past relevant work as a supermarket clerk, based on her age, education, and residual functional capacity, she would not be disabled" as there were a significant number of sedentary, unskilled jobs in the national economy that Plaintiff was capable of performing.  (R. at 38.)  Thus, the ALJ determined that although he already found that Plaintiff was capable of performing light work, if she was unable to perform that light work, she could then perform sedentary, unskilled work.

Plaintiff contends that in posing his hypothetical questions to the VE, the ALJ was required to present a hypothetical that included all of Plaintiff's impairments. Although Plaintiff is correct that the Third Circuit has stated that a hypothetical must include all of a Plaintiff's impairments, see Burns v. Barnhart, 312 F.2d 113, 123 (3d Cir. 1987) (citation omitted), those impairments must be based on "medically undisputed evidence of specific impairments," id. (citation omitted).  Plaintiff does not explain which "medically undisputed" impairments the ALJ should have included in his hypothetical.  Further, the ALJ's hypothetical was posed to determine whether, based on his finding that Plaintiff was capable of light work,

whether she would also be able to perform sedentary work.
The VE, who had reviewed the case file and was present
during Plaintiff's testimony, determined that Plaintiff, who
was capable of light work, was also capable of sedentary
work.  The VE also determined that a similarly-situated
claimant whose pain prohibited her from maintaining
attention to tasks for more than two hours would not be
capable of sedentary work.  There is no evidence in the
record, however, that Plaintiff's pain caused her to be
unable to maintain attention to a task for more than two
hours.  Thus, the ALJ did not err in posing his
hypotheticals to the VE because (1) he was not required to
consider Step Five, and (2) no undisputed medical evidence
demonstrated that Plaintiff was not capable of sedentary
work.

Based on the foregoing, substantial evidence supports
the ALJ's conclusion that Plaintiff's back and mental health
problems did not render her disabled.

**2.   Whether the ALJ erred at Step Two when he
determined that Plaintiff's respiratory problems
were not "severe."**

Plaintiff argues that the substantial evidence does not
support the ALJ's finding that her respiratory problems were
not "severe," and therefore did not render her disabled.  In

making his decision, the ALJ noted that the regulations
provide that an impairment is severe "if it imposes
significant restrictions in the ability to perform basic
work activities"; and "impairment will be found to be not
severe if medical evidence and other evidence in the record
establishes only a slight abnormality or a combination of
slight abnormalities which would have no more than a minimal
effect on and individual's ability to work."  (R. at 26,
citing 20 C.F.R. 404.1521 and 416.921(a).)  In making this
Step Two determination, the ALJ does not consider a
claimant's age, education or work experience.  (Id.)

The ALJ noted that Plaintiff's treating physician, Dr.
Neidorf, found that as of May 29, 2001, Plaintiff's
breathing had improved by using Advair and her home
nebulizer, and as of January 9, 2002, her shortness of
breath and chronic obstructive pulmonary disease ("COPD")
were stable.  (Id.)  Further, in a consultative examination
on November 7, 2002, testing for COPD was normal, and she
was observed not being in acute respiratory distress without
wheezing.  (Id.)  Based on this medical evidence, the ALJ
found that even though Plaintiff alleged to suffer from
emphysema, asthma, and COPD, there was "minimal clinical
evidence in the record to corroborate or support any finding

29

of significant vocational impact related to these
conditions." (Id.)

Plaintiff argues, however, that she has met her burden
of demonstrating that her respiratory problems were severe.
Plaintiff explains that the Step Two "inquiry is a *de
minimis* screening device to dispose of groundless claims,"
and that "any doubt as to whether this showing has been made
is to be resolved in favor of the applicant." McCrea v.
Commissioner, 370 F.3d 357, 360 (3d Cir. 2006).  To show
"doubt" in her favor, Plaintiff points to (1) Dr. Adams'
observation that just answering questions and even sitting
causes Plaintiff to get very short of breath, (2) Dr.
Neidorf treated her with medication for COPD, bronchitis and
asthma, (3) a Social Security Office employee noted that
Plaintiff had difficulty with breathing, sitting, standing,
and walking, and (4) Plaintiff was not able to blow into a
machine during a respiratory function test due to her poor
respiratory function.  (Pl. Br. at 20-21.)

Plaintiff's argument is unavailing because she has not
provided any evidence that her breathing problems affected
her ability to work.  The regulations provide, "If you do
not have any impairment or combination of impairments which
significantly limits your physical or mental ability to do

basic work activities, we [the Social Security Administration] will find that you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. §§ 404.1520(c), 416.920(c); see also id. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The regulations define "basic work activities" to include, inter alia, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  Id. §§ 404.1521(b)(1), 416.921(b)(1).

Here, although Plaintiff presented evidence that doctors have observed and treated her for breathing problems, she did not present any evidence that those breathing problems caused her to be unable to walk, stand, sit, lift, push, pull, reach, carry, or handle.  Indeed, Plaintiff's testimony regarding her daily life activities-- doing light shopping, preparing meals, making the bed, doing the dishes, maintaining grooming and hygiene needs independently, and socializing with friends--demonstrates her ability to perform basic work activities, such as walking, standing, carrying, and handling.  Consequently, the ALJ did not err at Step Two when he determined that

Plaintiff's respiratory problems were not "severe." <u>McCrea</u>, 370 F.2d at 360-61 ("The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole.").

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: <u>May 19, 2008  </u>          <u>  s/ Noel L. Hillman      </u>

At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.